UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


GLENN SMITH,

     Plaintiff,

v.                             Case No. 8:13-cv-2148-T-23TGW

SGT. T. DEEMER, *et al.*,

     Defendants.

_____/

# **O R D E R**

Smith's complaint alleges that the defendants violated his civil rights during a prison disciplinary proceeding. Smith paid the filing fee.[1] Nevertheless, the Prisoner Litigation Reform Act requires dismissal of a prisoner's action if the action "is frivolous, malicious, or fails to state a claim upon which relief may be granted[,] or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

Although his complaint receives a lenient construction, *see, e.g., Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam), and *Kirby v. Siegleman*, 195 F.3d 1285, 1289 (11th Cir. 1999), Smith's *pro se* complaint lacks merit.

---

[1] The "three-strike" provision in 28 U.S.C. § 1915(g) precludes Smith from proceeding *in forma pauperis*.

Smith alleges that, as a result of an altercation with another inmate in the "chow line" in the Hardee Correctional Institution, he was found guilty of "disorderly conduct" and sentenced to fifteen days of disciplinary confinement. Smith lost no credit toward an early release.  Smith contends that, contrary to *Wolff v. McDonnell*, 418 U.S. 539 (1974), the defendants violated his substantive and procedural due process rights in a prison disciplinary proceeding.

*Wolff*, 418 U.S. at 563-67, establishes five requirements an inmate is due in a prison disciplinary proceeding if an inmate loses credit toward early release.  First, the inmate must receive an adequate, written notice of the charges.  Second, he must receive the written notice at least twenty-four hours before the hearing.  Third, he must have an opportunity, in accord with safety and correctional goals, to call witnesses and present documentary evidence in his defense.  Fourth, the fact-finder must preserve a record of both the evidence and the reason for any disciplinary action.[2]  Fifth, if circumstances warrant, an inmate should receive the help of another inmate or a staff member.  Smith's allegation that he was denied procedural due process is erroneous because his reliance on *Wolff* is misplaced.

*Sandin v. Conner*, 515 U.S. 472, 484 (1995), explains (1) that *Wolff's* due process protection applies only if an inmate loses credit toward an early release and (2) that "[a]dmittedly, prisoners do not shed all constitutional rights at the prison gate, but

---

[2] *Superintendent v. Hill*, 472 U.S. 445, 454 (1985), requires that this written record show that the disciplinary committee's findings were based on "some evidence."

[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin* recognizes an exception to the "loss of early release credit" requirement if the condition of confinement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484. *See Overton v. Bazzetta*, 539 U.S. 126, 136–37 (2003) (providing that the temporary withdrawal of the visitation privilege for a disciplinary purpose is "not a dramatic departure from accepted standards for conditions of confinement"). *See also Moulds v. Bullard*, 452 Fed. App'x 851, 854-55 (11th Cir. 2011)[3] (recognizing that, under *Sandin*, a prisoner is "constitutionally entitled to procedural due process" only if deprived of a protected liberty interest, such as early release credit that shortens his confinement and that "Moulds was not entitled to procedural due process during his disciplinary hearing" because he lost no credit toward an early release); *Rodgers v. Singletary*, 142 F.3d 1252, 1252–53 (11th Cir. 1998) (holding that two months of administrative confinement implicates no protected liberty interest).

Recognizing his failure to meet the "loss of early release credit" requirement, Smith attempts to qualify for *Sandin's* "atypical and significant hardship" exception. (Doc. 1 at 8) Smith was confined in disciplinary confinement during December, 2011. Smith complains that while he was in disciplinary confinement the

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

temperature inside the cell never exceeded sixty degrees.  Smith admits that he possessed both a state-issued "thin jacket" and his personal clothing, "which included long underwear and 2 sweatshirts and 3 so-called 'blankets,'" and complains that he was "substantially cold all of the time temperatures were below approximately 78°."[4] Smith's "laundry list" of complaints about the conditions in disciplinary confinement include (1) that the cells in disciplinary confinement are smaller than the cells in administrative confinement; (2) that he could not control the lighting in the cell; (3) that he was deprived of his postage stamps, some personal books, dandruff shampoo, and skin lotion; (4) that he was allowed to shower only three times per week, which were the only times he was provided a change of clothing or permitted to shave; (5) that he was deprived of a toothbrush and toothpaste; (6) that the meals were not served hot; (7) that he could not lock the personal property bin inside his cell; (8) that he was not allowed outdoor exercise; (9) that he was placed in restraint when he was allowed to leave his cell; (10) that he was not allowed books from the general library and was permitted only limited access to the law library by use of a "paging system" to request legal materials; (11) that his cell-mate was the only person with whom he could converse; and (12) that he had access to neither a television nor a telephone.

Smith's conditions are similar to the conditions that inmate in *Sandin* faced during thirty days in disciplinary confinement, conditions that *Sandin* finds "did not

---

[4] Smith's alleged deprivation of adequate winter clothing is pending on summary judgment in *Smith v. Conner*, 8:12-cv-52-T-30AEP.

present the type of atypical, significant deprivation in which a State might

conceivably create a liberty interest." 515 U.S. at 486. As *Sandin* explains, 515 U.S.

at 485-86:

> This case, though concededly punitive, does not present a
> dramatic departure from the basic conditions of Conner's
> indeterminate sentence.
>
> The record shows that, at the time of Conner's punishment,
> disciplinary segregation, with insignificant exceptions, mirrored
> those conditions imposed upon inmates in administrative
> segregation and protective custody. [ ] Conner's confinement
> did not exceed similar, but totally discretionary, confinement in
> either duration or degree of restriction. Indeed, the conditions
> [in the prison] involve significant amounts of "lockdown time"
> even for inmates in the general population. Based on a
> comparison between inmates inside and outside disciplinary
> segregation, the State's actions in placing him there for 30 days
> did not work a major disruption in his environment.

Smith's brief stay of fifteen days in disciplinary confinement was half of Conner's

thirty days in detention. Conditions that are possibly unconstitutional if a permanent

feature of a prisoner's life may not offend the Constitution if imposed only

temporarily. *See, e.g., Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) ("A filthy,

overcrowded cell and a diet of 'grue[l]' might be tolerable for a few days and

intolerably cruel for weeks or months."). Smith was sentenced to prison as

punishment for his crimes and he was placed in segregated housing as a disciplinary

measure. "[T]he Constitution does not mandate comfortable prisons. If prison

conditions are merely restrictive and even harsh, they are part of the penalty that

criminal offenders pay for their offenses against society." *Chandler v. Crosby*, 379 F.3d

1278, 1289 (11th Cir. 2004).  Smith's conditions are wholly unlike situations in which

courts have found a violation of *Sandin's* "atypical [and] significant deprivation."

*See, e.g., Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) ("Unlike the 30-day placement

in *Sandin*, placement at O[hio] S[tate] P[rison] is indefinite and, after an initial 30-day

review, is reviewed just annually. Second is that placement disqualifies an otherwise

eligible inmate for parole consideration.  . . .   While any of these conditions standing

alone might not be sufficient to create a liberty interest, taken together they impose

an atypical and significant hardship within the correctional context.  It follows that

respondents have a liberty interest in avoiding assignment to OSP.") (citation

omitted); *Vitek v. Jones*, 445 U.S. 480, 494 (1980) ("[T]he stigmatizing consequences

of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with

the subjection of the prisoner to mandatory behavior modification as a treatment for

mental illness, constitute the kind of deprivations of liberty that requires procedural

protections."); *Kirby v. Siegelman*, 195 F.3d 1285, 1291-92 (11th Cir. 1999) (A

prisoner "has a liberty interest in not being branded a sex offender" and "the

stigmatizing effect of being classified as a sex offender constitutes a deprivation of

liberty under the Due Process Clause.").

  The requirements established in *Wolff* are inapplicable to Smith because he lost

no early release credits and his confinement in disciplinary confinement was not an

"atypical, significant deprivation."  As a consequence, Smith fails to state a claim

that he can pursue in a civil rights action.

Accordingly, the civil rights complaint is **DISMISSED**.  The clerk must enter a judgment against Smith and close this case.

ORDERED in Tampa, Florida, on December 5, 2013.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE